IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA　　:
　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　:　　　　　4:08-CR-00280
　　　　　　　　　　　　　　　:
DANIEL M. SULLIVAN,　　　　　:
　　　　　　　　　　　　　　　:　　　　　(Judge McClure)
　　　　　　　Defendant　　　　:

**M E M O R A N D U M**

June 14, 2010

## I. BACKGROUND

On July 10, 2008, a grand jury sitting in the Middle District of Pennsylvania

returned a one-count indictment against defendant Daniel Michael Sullivan

charging him with Distribution of Child Pornography in violation of 18 U.S.C. §

2252A(a)(2)(B).  (Rec. Doc. No. 1).[1]  Sullivan was arrested on July 17, 2008.

---

[1] The one-count indictment, filed with this court on July 10, 2008, charges as
follows:

> From approximately the 29th day of June 2008, the exact date
> unknown, up to and including the date of this indictment, at
> Williamsport, Lycoming County, in the Commonwealth of
> Pennsylvania, within the Middle District of Pennsylvania, and within
> the jurisdiction of this Court, the defendant, DANIEL MICHAEL
> SULLIVAN[,] a person who has previously been convicted under the
> laws of the State of Maine of an offense involving visual sexual
> aggression against a child, did knowingly distribute material that
> contained child pornography as defined in 18 U.S.C. § 2256(8), that is
> depictions of a minor engaging in sexually explicit conduct, that had
> been transported in interstate and foreign commerce by computer, in
> violation of 18 U.S.C. § 2252A(a)(2)(B).

## II. FACTS

The facts, taken from the PSR, are as follows. In May of 2008, a special agent, posing as a 13 year-old boy, entered a chatroom entitled "Both Ways 2." Apparently, bi-sexual or gay individuals frequented this chatroom. A William Valentine contacted the 13 year-old boy with the screen name "i_love_boys_1269b@yahoo.com."[2] The special agent observed in Valentine's profile window a collage of pornographic images containing depictions of children. In this initial chat, Valentine also provided pornographic images of children to the special agent. These images that were provided were of male victims under the age of 12.

From May 2, 2008, until July 13, 2008, the special agent and Valentine had approximately 26 chats. Valentine transmitted over 1,000 images of child pornography to the special agent that were highly graphic, containing bondage and bestiality.

On June 29, 2008, Valentine provided Sullivan with the special agent's

_____

(Rec. Doc. No. 1).

[2] The defendant objected to paragraphs 4, 5, and 6 of the PSR, which refer to Valentine and his interaction with the defendant and the special agent. These objections had no effect on the applicable guideline range. Therefore, facts contained within these paragraphs are recited here for background and context.

undercover internet address, as Sullivan apparently was willing to travel to Pennsylvania to have sex with the 13 year-old boy. At this time, Sullivan lived in North Berwick, Maine, which was about a 12-hour drive from the special agent's location. Valentine resided in Texas.

In total, there were 15 chats between the special agent and Sullivan, beginning on June 29, 2008. During the course of these chats, Sullivan provided 137 images of child pornography to the special agent, approximately 20 percent of which portrayed children under 12 years of age. Arrest and search warrants were executed on July 17, 2008, at Sullivan's residence. Officials located 292 images of child pornography on Sullivan's computer.[3] Three images of sado-masochistic behavior were located, one image of anal penetration of a baby and one image of bestiality.

## III. PROCEDURAL HISTORY

On August 12, 2008, Sullivan entered a not guilty plea. (Rec. Doc. No. 12). On December 29, 2009, Sullivan filed a motion to withdraw his plea of not guilty. (Rec. Doc. No. 51). By an order filed on the same date, this court granted the

---

[3] These 292 images contained the 137 images sent to the special agent.

defendant's motion and entered a plea of guilty as to Count I. Id.[4] On April 2,

2010, the court received a Presentence Investigation Report ("PSR"), with an

Addendum. Pursuant to this PSR, an advisory guideline range of 188 months to

235 months was produced, based on the defendant's Criminal History Category of

II and Total Offense Level of 35. PSR, ¶ 49. On June 2, 2010, the court received a

Second Addendum to the PSR, which contained two additional objections by the

defendant and responses from Probation. Sullivan objected to eight paragraphs in

the PSR. His objections to the PSR can be summarized into two issues that could

affect the guideline range: (1) the defendant's objection to any upward departure

made pursuant to U.S.S.G. § 4A1.3(a), and referenced in paragraph 61 of the PSR,

which would require the court's conclusion that a Criminal History Category of II

substantially under-represents Sullivan's criminal history or the likelihood of

recidivism;[5] and (2) the defendant's contention that two enhancements, pursuant to

_____

[4] As the government and the defendant were unable to reach an agreement
over the terms of a plea, the defendant entered on open guilty plea on December
29, 2009.

[5] Prior to the sentencing hearing held by this court on June 9, 2010, the
government offered no argument as to the applicability of an upward departure
pursuant to U.S.S.G. § 4A1.3(a), and no formal recommendation for such an
upward departure is contained in the PSR. At sentencing, the government did
argue that an upward departure was warranted based upon the government's view
that the defendant's Criminal History Category of II substantially under-represents
the seriousness of the defendant's history of crime and recidivist tendencies. As

U.S.S.G. § 2G2.2 and found in paragraphs 17 and 19 of the PSR, were

inapplicable, as these enhancements would be based upon images that did not form

the basis for the Distribution of Child Pornography charge to which the defendant

pled guilty.[6]  Sullivan also asked that this court grant his request for a downward

departure, based upon an extraordinary physical impairment, pursuant to U.S.S.G.

§ 5H1.1.  As the applicability of this downward departure affected Sullivan's

guideline range, this issue is also addressed in the instant Memorandum and Order.

If all of the above issues, absent a downward departure pursuant to U.S.S.G.

§ 5H1.1,[7] were to be resolved in Sullivan's favor, the guideline imprisonment

range would decrease to 87 to 108 months.  Sullivan also contended that his prior

_____

the court did not believe such a departure was warranted in the instant
circumstance, we sustained the defendant's objection to paragraph 61.

[6] In his sentencing memorandum, Sullivan also argued for a non-guideline
sentence pursuant to the applicable factors under 18 U.S.C. § 3553.  This argument
is not related to the objections in the presentence report and does not affect the
guideline range; instead, it is an argument for a variance and, therefore, will not be
addressed in this Memorandum and Order.  This argument was considered at the
sentencing hearing as part of the § 3553 considerations, and resulted in a
downward variance from the bottom of the applicable guideline range based upon
Sullivan's impaired health.

[7] The court notes that the defendant, in his sentencing brief, did not make a
recommendation as to what an appropriate departure might be pursuant to U.S.S.G.
§ 5H1.1.  In the final line of his sentencing brief, however, the defendant does
contend "that a non-Guideline sentence of ten years or less is sufficient, but not
greater than necessary, to comply with the statutory directives of 18 U.S.C. §
3553(a)."  (Rec. Doc. No. 58 at 20).

convictions did not constitute prior convictions under 18 U.S.C. § 2252A(b)(1); if such convictions were to qualify under that statute, the defendant's applicable statutory range for the instant offense would increase from 5 to 20 years to 15 to 40 years. Although this issue did not impact Sullivan's advisory guideline range, it did impact the statutory mandatory minimum and maximum penalties faced by the defendant and therefore is addressed by this court's Memorandum and Order.

On June 7, 2010, two days prior to Sullivan's sentencing hearing, the defendant filed a sentencing memorandum, in which he argued that the enhanced mandatory minimum and maximum penalties under 18 U.S.C. § 2252A(b)(1) were inapplicable, offered support for his objections to paragraphs 17 and 19 of the PSR, argued that a downward departure pursuant to U.S.S.G. § 5H1.4 was warranted, and contended that a non-guideline sentence was warranted pursuant to the applicable § 3553(a) factors. (Rec. Doc. No. 58). On June 9, 2010, several hours before the sentencing hearing, the government filed its response. (Rec. Doc. No. 59). In its sentencing brief, the government argued that the enhanced mandatory minimum and maximum under 18 U.S.C. § 2252A(b)(1) should be applied. The government did not address, in its brief, the defendant's objections to paragraphs 17 and 19 of the PSR or the defendant's contention that he was entitled to a

downward departure pursuant to U.S.S.G. § 5H1.4.[8]  In addition, the government

argued that, pursuant to the applicable § 3553(a) factors, a sentence within the

applicable guidelines range was warranted.  On June 9, 2010, this court held a

sentencing hearing at which we heard argument relating to the instant matter.  This

Memorandum and Order sets forth the reasoning behind this court's decision at the

sentencing hearing that a guideline range of 188 to 235 months imprisonment was

appropriate in the instant case.

All of the rulings set forth in the instant Memorandum and Order were made

during, or at the conclusion of, the sentencing hearing held on June 9, 2010.  At

that hearing, we sustained the defendant's objection to paragraph 61 of the PSR

and overruled the defendant's objection to paragraphs 17 and 19 of the PSR.  In

addition, we concluded that a downward departure based upon extraordinary

physical impairment pursuant to U.S.S.G. § 5H1.1 was not warranted.  Finally, we

concluded that the defendant's Maine conviction did not constitute a prior

conviction under 18 U.S.C. § 2252A(b)(1), and that the government offered

insufficient evidence for this court to make an adequate determination as to

whether the defendant's New Hampshire conviction constitutes a prior conviction

---

[8] At the sentencing hearing, the government did offer oral argument as to
each of these issues.

under § 2252A(b)(1).[9]  The following contains the reasoning supporting the above

rulings.

## IV.  DISCUSSION

### A.  Applicability of the Enhanced Mandatory Minimum and Maximum Penalties under 18 U.S.C. § 2252A(b)(1)

Sullivan first contended that the enhanced mandatory minimum and

maximum penalties under 18 U.S.C. § 2252A(b)(1) should not be applied to him.

In relevant part, § 2252A(b)(1) provides:

> Whoever violates, or attempts or conspires to violate, paragraph (1),
> (2), (3), (4), or (6) of subsection (a) shall be fined under this title and
> imprisoned not less than 5 years and not more than 20 years, but, if
> such person has a prior conviction . . . under the laws of any State
> *relating to* aggravated sexual abuse, sexual abuse, or abusive sexual
> conduct involving a minor or ward, or the production, possession,
> receipt, mailing, sale, distribution, shipment, or transportation of child
> pornography, or sex trafficking of children, such person shall be fined
> under this title and imprisoned for not less than 15 years nor more
> than 40 years.

18 U.S.C. § 2252A(b)(1) (emphasis added).  Two prior convictions are potentially

at issue.  The first is the conviction specifically named in the indictment.  That

conviction concerned a violation of a Maine statute, 17-A.M.R.S. § 256, entitled

---

[9] At the hearing, the court proceeded to impose a sentence of 180 months, a
sentence that included an 8 month downward variance from the bottom of the
applicable guideline range based upon Sullivan's impaired health.

8

Visual Sexual Aggression Against a Child.[10]  Sullivan contended that the definition
of this crime failed to meet the language of § 2252A(b)(1), which requires that the
prior conviction relate "to aggravated sexual abuse, sexual abuse, or abusive sexual
conduct involving a minor . . . ."  The second prior conviction was based upon a
charge for Aggravated Felonious Sexual Assault under New Hampshire's criminal
code, R.S.A. § 632-A:2.[11]  Sullivan contended that it would be improper for the
government to rely on this prior conviction, as it was not named in the indictment.
As such, so Sullivan's argument went, if this prior conviction were to be used to
enhance the penalties faced by Sullivan, the government would, in effect, have
improperly amended the indictment.  See United States v. Robinson, 904 F.2d 365,
369 (6th Cir. 1990), cert. denied, 498 U.S. 946 (1990) (indicating that "[a]n

---

[10] The statute pursuant to which Sullivan was convicted, 17-A.M.R.S. § 256
(2000), a Class D crime, read as follows:

> A person is guilty of visual sexual aggression against a child if, for the
> purpose of arousing or gratifying sexual desire or for the purpose of
> causing affront or alarm, the actor, having in fact attained 18 years of
> age, exposes the actor's genitals to another person or causes the other
> person to expose that person's genitals to the actor and the other
> person, not the actor's spouse, has not in fact attained 14 years of age.

[11] At the sentencing hearing, the defense argued that, in fact, the defendant
was not convicted under R.S.A. § 632-A:2, the offense charged in the criminal
complaint dated March 17, 1983.  Instead, defendant contended that he was
convicted pursuant to an indictment which alleged a violation of R.S.A. § 632-A:4
for Sexual Assault.

*amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them") (quoting United States v. Ford, 872 F.2d 1231, 1235 (6th Cir. 1989) (emphasis included)).  Sullivan claimed that, "in any event, the New Hampshire Sexual Assault conviction . . . does not contain any of the requisite elements found in 18 U.S.C. § 2252A(b)(1) . . . ."  (Rec. Doc. No. 58 at 7).

Pursuant to the dictates of Taylor v. United States, 495 U.S. 575, 600 (1990), in determining whether a prior conviction will qualify as a predicate offense, a sentencing court is required to look "only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions."  See also United States v. Galo, 239 F.3d 572, 582 (3d Cir. 2001) (noting that "§ 2251(d) incorporates the categorical approach because it focuses the sentencing court's attention on the statutory definition of a prior conviction" and that "[i]t is the elements of a given statute, not the conduct that violates it[,] that determines if the statute relates to sexual exploitation of children").  In cases "such as those in which there has been a conviction under a statute that could criminalize conduct broader than that subject to enhancement, courts may look beyond the statutory definition to the 'indictment or information and jury instructions.'" United States v. Morehouse, 318 Fed. Appx. 87, 89 (3d Cir. 2009) (quoting Taylor, 495 U.S. at

602).

At the outset, we agree with Sullivan that the Maine statute is insufficient to constitute a prior conviction pursuant to § 2252A(b)(1). The definition of that statute, which requires exposure "for the purpose of arousing or gratifying sexual desire *or for the purpose of causing affront or alarm*," is simply too broad to constitute aggravated sexual abuse, sexual abuse, or abusive sexual conduct within the meaning of § 2252A(b)(1). 17-A.M.R.S. § 256 (emphasis added). Quite simply, a defendant could be convicted under 17-A.M.R.S. § 256 for exposing himself or herself simply to cause "affront or alarm." This fact undercuts any argument that any offense resulting in conviction under 17-A.M.R.S. § 256 contains the requisite "sexual" nature pursuant to § 2252A(b)(1). Therefore, at the sentencing hearing, we concluded that Sullivan's prior conviction under 17-A.M.R.S. § 256 did not qualify as a prior conviction pursuant to § 2252A(b)(1).

The second prior conviction, under the New Hampshire criminal code, presented additional difficulties. Defendant first claimed that any attempt by the government to utilize the prior conviction under R.S.A. § 632-A:2 for the purposes of § 2252A(b)(1) would be an improper amendment of the indictment issued by the grand jury. However, the United States Supreme Court has held that a prior conviction that acts to increase the statutory maximum for an offense is not an

element of the offense.  Almendarez-Torres v. United States, 523 U.S. 224, 243

(noting that "recidivism . . . is a traditional, if not the most traditional, basis for a

sentencing court's increasing an offender's sentence").  The Circuit Court of

Appeals for the Third Circuit has noted that this holding was maintained in

Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("*Other than the fact of a prior*

*conviction*, any fact that increases the penalty for a crime beyond the prescribed

statutory maximum must be submitted to a jury, and proved beyond a reasonable

doubt.") (emphasis added), and that the so-called Almendarez-Torres exception has

survived United States v. Booker, 543 U.S. 220 (2005), and its progeny.  See

United States v. Coleman, 451 F.3d 154, 159 (3d Cir. 2006).  Therefore, it would

seem to this court that the failure of the government to include Sullivan's prior

New Hampshire conviction in the indictment would not act as a bar to considering

such a conviction as a prior conviction under § 2252A(b)(1).[12]  See United States v.

Vargas, 477 F.3d 94, 105 (3d Cir. 2007) (noting that Almendarez-Torres

"continues to bind our decisions").

--------

[12] The defendant, at oral argument, argued that, even in light of Almendarez-Torres, the fact that the government chose to include the Maine crime of Visual Sexual Aggression tainted the grand jury's indictment.  However, as we concluded that neither the Maine conviction nor the New Hampshire conviction qualified as a prior conviction under § 2252A(b)(1), this issue need not be addressed in the instant Memorandum and Order.

Based upon the evidence offered by the government, we could not conclude, at the sentencing hearing, that the prior New Hampshire conviction was a prior conviction that, under § 2252A(b)(1), related " to . . . sexual abuse involving a minor or ward."[13] Sullivan contended that the New Hampshire statute "does not contain any of the requisite elements found in 18 U.S.C. § 2252A(b)(1) . . . ." (Rec. Doc. No. 58 at 7). However, this type of elemental argument is inapplicable for purposes of § 2252A(b)(1). Instead, the issue is whether the New Hampshire conviction is "a prior conviction . . . under the laws of any State *relating to* aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward . . . ." 18 U.S.C. § 2252A(b)(1) (emphasis added).[14] Even

---

[13] Sullivan also claims that, because the United States Sentencing Guidelines prohibit the use of prior convictions, for the purposes of determining a defendant's Criminal History Category, beyond a 15-year time period, it would be improper to allow the government to use a prior conviction dating back to 1985 to enhance Sullivan's sentence. (Rec. Doc. No. 58 at 7-8). The court, however, fails to understand how a guidelines calculation is applicable to an enhancement required pursuant to the language of a statute, namely § 2252A(b)(1). Nothing in § 2252A(b)(1) requires that a prior conviction used to enhance mandatory minimum and maximum penalties fall within a certain time period, and Sullivan's counsel references no applicable case law. Therefore, the court finds no reason why the 1985 New Hampshire conviction would not qualify for enhancement purposes simply because it occurred more than 15 years ago.

[14] As the government indicated, the phrase "relating to" has been broadly interpreted by the federal courts. The Ninth Circuit has noted that the United States Supreme Court has defined the phrase "relating to" as meaning "'to stand in some relation to; to have bearing or concern; to pertain; refer; to bring into

considering the broad meaning courts have used when interpreting the phrase

"relating to," it is not clear to this court that Sullivan was convicted under a New

Hampshire statute that has some relation to, bears upon, or is associated with the

crime of sexual abuse involving a minor. In fact, it is not even clear, based upon

the evidence presented, under which provision of the New Hampshire criminal

code Sullivan was convicted. While the PSR indicated that Sullivan was convicted

for Sexual Assault in 1985, PSR, ¶ 31, a New Hampshire criminal complaint

attached to the PSR and dated March 17, 1983, indicated that Sullivan was charged

with Attempted Aggravated Felonious Sexual Assault, R.S.A. § 632-A:2.[15]

---

association with or connection with." United States v. Sinerius, 504 F.3d 737, 743 (9th Cir. 2007) (quoting Morales v. Trans World Airlines, 504 U.S. 374, 383 (1992). The Ninth Circuit clarified that the proper question is whether a state offense stands in some relation to the generic offense of sexual abuse, or bears upon or is associated with that offense. See id. Section 2252A, however, does not require "a sentencing enhancement for individuals convicted of state offenses *equivalent* to sexual abuse." Id. (emphasis included). The Third Circuit has reached a similar conclusion. See Galo, 239 F.3d at 581 (noting that "[§] 2251(d) does not require a sentencing court to determine if the prior conviction satisfies the generic elements of a crime"; instead, "the sentencing court need only determine if the statute (not the conduct) the defendant was previously convicted of relates to the sexual exploitation of children").

[15] In fact, in its sentencing memorandum, the government stated, "In 1985 Sullivan received a sentence of 1 to 3 years in prison for a violation of New Hampshire law § 632A-2, Aggravated Felonious Sexual Assault." (Rec. Doc. No. 59 at 8). It is also noteworthy that the exact provision cited by the government in its brief, which involves a victim of less than 13 years of age, did not become effective until January 1, 1987, a date well after Sullivan was both charged for and

Several other documents, however, indicated that Sullivan was later indicted by a grand jury in April of 1983 and later found guilty for the crime of Sexual Assault, R.S.A. § 632-A:4, in 1985.  However, no evidence of the indictment, or of the exact subsection of § 632-A:4 under which Sullivan was convicted, was offered to the court.

At sentencing, this court determined that, pursuant to Supreme Court and Third Circuit case law, it could not make a proper determination as to whether the crime for which Sullivan was convicted qualified as a predicate offense under § 2252A(b)(1).  Therefore, we concluded that the enhanced mandatory minimum and maximum penalties under § 2252A(b)(1) were not applicable in Sullivan's case.

### B.  Applicability of the U.S.S.G. § 2G2.2 Enhancements Set Forth in Paragraphs 17 and 19 of the PSR

Second, Sullivan objected to the enhancements contained in paragraphs 17 and 19 of the PSR.  According to the PSR, Probation recommended a four-level increase pursuant to § 2G2.2(b)(4) because "[t]he offense involved material that portrays sadistic or masochistic conduct."  PSR, ¶ 17.  In addition, Probation recommended a three-level increase pursuant to § 2G2.2(b)(7)(B) because the offense involved "more than 150 but less than 300 images of child pornography . .

---

convicted of the New Hampshire crime.

. .”  PSR, ¶ 19.  The Sentencing Guidelines define "offense" as "the offense of

conviction and all relevant conduct under Section 1B1.3 (Relevant Conduct) unless

a different meaning is specified or is otherwise clear from the context."  U.S.S.G. §

1B1.1, comment, n.1(*l*)).  Sentencing Guideline § 1B1.3 defines conduct that is to

be considered for the purposes of sentencing and states, in relevant part, that,

"unless otherwise specified, . . . specific offense characteristics . . . shall be

determined on the basis of . . . all acts and omissions committed . . . by the

defendant . . . that occurred during the commission of the offense of conviction . . .

."  U.S.S.G. § 1B1.3(a)(1)(A).  In addition, "unless otherwise specified, . . .

specific offense characteristics . . . shall be determined on the basis of[,] . . . solely

with respect to offenses of a character for which § 3D1.2(d) would require

grouping of multiple counts, all acts and omissions described in subdivisions

(1)(A) and (1)(B) above that were part of the same course of conduct or common

scheme or plan as the offense of conviction . . . ."  U.S.S.G. § 1B1.3(a)(2).

Sullivan objected to these recommended increases because they pertained to

images that did not form the basis for the one-count indictment to which Sullivan

entered an open guilty plea.  As Sullivan pointed out, in the indictment, he was

charged only with distributing child pornography in violation of § 2252A(a)(2)(B),

and he distributed only 137 images to the special agent.  (Rec. Doc. No. 58 at 8).

Sullivan contended that the images that formed the basis for the enhancements contained in paragraphs 17 and 19 of the PSR, namely those images that portray sadistic or masochistic conduct and that elevate the total number of images to at least 150, were not distributed to the special agent and therefore "were not conduct relevant to the distribution offense." Id. at 9. In addition, Sullivan argued that "[t]he compiling of the collection of images was different in nature and time frame from the sending of the images to [the special agent]." Id. As such, Sullivan contended that he should receive only a two-level increase, pursuant to § 2G2.2(b)(7)(A), for the 137 images sent, and no enhancement for the three images depicting sadistic or masochistic conduct, as these images were never sent to the special agent and thus could not form a basis for the crime charged in the indictment. Id. at 9-10.

In his sentencing brief, Sullivan referenced one case from the District Court for the Southern District of New York and two cases from the Circuit Court of Appeals for the Fifth Circuit. As Sullivan noted, the District Court for the Southern District of New York has stated:

> Even accepting the Government's assertions that agents discovered at least 40 videos on Defendant's computer media, each considered to contain 75 images, pursuant to U.S.S.G. § 2G2.2, Application Note 4(B)(ii), the Government has thus demonstrated that Taylor possessed more than 600 images, but has not offered any evidence of when or

how Taylor received, or if he distributed, those images. Given the
Government's decision to charge Taylor with receipt and distribution,
rather than possession, the Court finds that the only images that can be
counted as 'involved' in the instant offense are those exchanged with
the UC, which, given the evidence before the Court, total no more
than 300.

United States v. Taylor, 2008 U.S. Dist. LEXIS 44618, at *18 (S.D.N.Y. June 2,

2008). Sullivan also referenced two Fifth Circuit opinions as support for his

contention that he should receive only a two-level enhancement for the 137 images

sent to the special agent, and not a three-level enhancement for the over 150

images in total that were found on his computer. See United States v. Fowler, 216

F.3d 459, 461 (5th Cir. 2000) (concluding that "[t]he electronic mailing of the

image that was the basis of the count of conviction occurred at a discrete moment,

and [the defendant's] receipt of the other, sadistic images did not occur 'during the

commission of the offense of conviction'")[16]; see also United States v. Boudreau,

---

[16] In a dissent, Judge Emilio M. Garza voiced his disagreement with the
majority's conclusion that the defendant's sentence should not have been enhanced
under § 2G2.2(b)(3) for the possession of sadistic material. See Fowler, 216 F.3d
at 463. Judge Garza noted that the defendant's "possession of the sadistic images
is proscribed by the same criminal statute as his distribution conviction" and, as
such, "the enhancement here fits within § 2G2.2(b)(3)'s clear intent to punish all
relevant uncharged conduct." Id. at 463-64. In addition, Judge Garza pointed out
that United States v. Ellison, the only other case to address the issue at that time,
contradicted the majority's view. Id. at 464. Judge Garza also indicated that,
though the defendant received the sadistic images two years prior to his
commission of the offense conduct, "he continued to possess them up to and
during the time of the offense." Id. Therefore, Judge Garza concluded that such

250 F.3d 279, 285 (5th Cir. 2001) (concluding that, as the defendant was convicted for the possession of magazines that contained child pornography, enhancement of the defendant's sentence by two levels because of his "concurrent possession of the computer images" was error).

However, other circuits have reached a different conclusion. The Seventh Circuit, in <u>United States v. Ellison</u>, affirmed the sentencing determination of the district court, which had enhanced the defendant's sentence under § 2G2.2(b)(3) based on his possession of sadomasochistic magazines as relevant conduct. 113 F.3d 77, 83 (7th Cir. 1997). The defendant's crime of conviction in <u>Ellison</u> was receipt of a pornographic videotape. <u>Id</u>. The defendant admitted that his possession was contemporaneous with his receipt of the videotape, and the Seventh Circuit concluded that the district court's inclusion of the magazines as relevant conduct "was far from clear error." <u>Id</u>. The court also noted that any "temporal relevance of the magazines . . . is unrelated to when and how [the defendant] acquired them; they are relevant because he illegally possessed them (and, he admitted, 'used' them to keep him from seeking out boys) contemporaneously with his crime of receipt." <u>Id</u>.

_____

continued possession of the sadistic material was relevant conduct to the offense conduct, which was a "violation of another part of the same child pornography statute." <u>Id</u>.

In <u>United States v. Dunlap</u>, 279 F.3d 965, 966 (11th Cir. 2002), the

defendant similarly argued that sadistic images discovered by authorities did not

constitute relevant conduct subject to enhancement, as they were not the images

that were transmitted "that formed the basis of his conviction."  The Eleventh

Circuit rejected this argument and, in analyzing the applicability of §§ 1B1.1 and

1B1.3(a)(1), stated that, "[u]nder any ordinary interpretation of the word 'during,'

if [the defendant] possessed the sadistic images when he (in May 1998) transmitted

the child pornography, then the possession is 'relevant conduct.'" <u>Id</u>.  The court

noted that such a conclusion was consistent with the Seventh Circuit's decision in

<u>United States v. Ellison</u> and Judge Garza's dissent in <u>United States v. Fowler</u>.  <u>Id.</u>,

n.3.  The Eighth Circuit has reached a similar conclusion.  <u>See</u> <u>United States v.</u>

<u>Stulock</u>, 308 F.3d 922, 926 (8th Cir. 2002) (concluding that it was not clear error

for the district court "to find that [the defendant's] possession of images containing

violent child pornography was an act committed during his search for and receipt

of the child pornography video that was the basis of the charged offense") (citing

<u>Ellison</u> with approval).

In light of the above, we concluded, at sentencing, that Sullivan's possession

of the images that did not form the basis of the charged offense was still relevant

conduct "that occurred during the commission of the offense of conviction," within

the scope of § 1B1.3(a)(1). As the indictment charges, from approximately June

29, 2008, until the date of the indictment, July 10, 2008, Sullivan distributed

material containing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B).

While § 2252A(a)(2)(B) prohibits the receipt or distribution of child pornography,

the possession of such material is prohibited pursuant to § 2252A(a)(5). Sullivan,

in his sentencing memorandum, claimed that "*the compiling* of the collection of

images was different in nature and time frame from *the sending* of the images" to

the special agent. (Rec. Doc. No. 58 at 9) (emphasis added). Even if this were the

case, the defendant *possessed* the images after receipt up to and until his arrest on

July 17, 2008. This possession occurred during the same temporal time frame as

the offense charged,[17] and possession of such material is prohibited by another part

of the child pornography statute identical to that under which the defendant was

charged and to which the defendant pled guilty. In light of the above, we

concluded at sentencing that Sullivan's possession of the additional images,

including the three sadistic or masochistic images, was relevant conduct under §

1B1.3(a)(1), as this possession "occurred during the commission of the offense of

---

[17] As noted above, the conduct that formed the basis for the charged offense, namely the sending of 137 images of child pornography over the course of 15 chats, occurred during a relatively short two-week time period.

conviction."[18]

Therefore, we overruled the defendant's objections to the recommended enhancements contained in paragraphs 17 and 19 of the PSR.

## C. Sullivan's Entitlement to a Downward Departure Pursuant to U.S.S.G. § 5H1.1

Finally, we addressed at sentencing Sullivan's contention that he was entitled to a downward departure, based upon extraordinary physical impairment, pursuant to U.S.S.G. § 5H1.1. Under § 5H1.4, though "[p]hysical condition or appearance . . . is not ordinarily relevant in determining whether a departure may be warranted[,] . . . an extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be

---

[18] The court notes that, even if we were to conclude that the defendant's possession of the additional images did not constitute relevant conduct under § 1B1.3(a)(1), such possession would constitute relevant conduct under § 1B1.3(a)(2), as § 3D1.2(d) lists § 2G2.2 as a groupable offense and the defendant's possession of the additional images was "part of the same course of conduct or common scheme or plan as the offense of conviction . . . ." In United States v. Buchanan, 485 F.3d 274, 286-87 (5th Cir. 2007), the Fifth Circuit noted that, "[e]ven though count five charges a different crime from the other counts, the crimes are similar, and [the defendant] has not shown that his receipt of the sadistic and masochistic image was temporally distant from receipt of the four images on which counts one through four were based." Therefore, the Fifth Circuit concluded that "[t]he district court did not commit plain error by concluding that the sadomasochistic depiction of child pornography found on Buchanan's hard drive was part *of the same course of conduct* as the conviction for receipt of child pornography." Id. at 287 (emphasis added).

as efficient as, and less costly than, imprisonment." Physical condition is a discouraged factor that will justify downward departure by a court "only in extraordinary situations." United States v. Bostic, 371 F.3d 865, 875 (6th Cir. 2004).

In his sentencing brief, and at the sentencing hearing, Sullivan argued that he suffers from a number of serious medical problems, including chronic obstructive pulmonary disease ("COPD"), sleep apnea, emphysema, and blindness in his right eye. (Rec. Doc. No. 58 at 11). As support, Sullivan attached two exhibits, one a report from Charles Hintermeister, DO, and one a "COPD reference" from an online resource, to his sentencing brief. Id., Exhibits A and B. It appears as though Sullivan has end-stage COPD, which is fatal, and has a daily supply of oxygen.

We concluded at sentencing that the impairment suffered by Sullivan was not extraordinary enough to warrant a departure under § 5H1.4. The only evidence Sullivan submitted to the court prior to the sentencing hearing was a report by Charles Hintermeister, DO, and a "COPD reference" from an online resource. Id., Exhibits A and B. The report does not indicate whether incarceration would be detrimental to Sullivan's health; however, the report does indicate that Sullivan "is of course encouraged quit [sic] smoking which he states he does not intend to do."

Id., Exhibit A.[19]  We concluded that the evidence offered, both prior to and at sentencing, did not support a finding of impairment such that departure was warranted under § 5H1.4.  See Bostic, 371 F.3d at 876 (noting that, while "numerous 'physical infirmities' might justify a downward departure," prior Sixth Circuit decisions "indicate that a doctor's letter and the 'Physical Condition' section of the PSR are not sufficient evidence to justify a downward departure"). The other maladies Sullivan claimed to suffer from similarly did not appear to be extraordinary.  In addition, there was no indication that Sullivan's medical conditions could not adequately be treated during incarceration.  See United States v. Sally, 116 F.3d 76, 79 (3d Cir. 1997).  Therefore, we denied Sullivan's motion for a downward departure pursuant to U.S.S.G. § 5H1.4.

## V.  CONCLUSION

In light of the above, we sustained the defendant's objection to paragraph 61 of the PSR and overruled the defendant's objections to paragraphs 17 and 19 of the PSR.  In addition, we denied the defendant's request for a downward departure based upon extraordinary physical impairment and pursuant to U.S.S.G. § 5H1.1, as we concluded that such a departure was not warranted.  Finally, we concluded

---

[19] The report indicates that Sullivan continues to smoke one half pack of cigarettes a day.  Id.  At the sentencing hearing, Sullivan contended that he quit smoking after his imprisonment.

that the enhanced penalty provisions under 18 U.S.C. § 2252A(b)(1) were

inapplicable.

<div align="center" style="float:right">

s/James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :
                            :
            v.              :            4:08-CR-00280
                            :
DANIEL M. SULLIVAN,         :
                            :            (Judge McClure)
            Defendant       :

**ORDER**

June 14, 2010

In accordance with the accompanying memorandum and the sentencing

hearing held on June 9, 2010, and for the purpose of confirming and memorializing

the actions then taken on the record,  **IT IS HEREBY ORDERED THAT:**

1.    Defendant's objection to paragraph 61 is **SUSTAINED**.

2.    Defendant's objections to paragraphs 17 and 19 of the Presentence

       Investigation Report are **OVERRULED**.

3.    As the court concludes that a departure pursuant to U.S.S.G. § 5H1.1

       is not warranted, the Defendant's request for a downward departure

       based upon extraordinary physical impairment is **DENIED**.

4.    The Defendant is not subject to the enhanced penalty provisions under

18 U.S.C. § 2252A(b)(1).

5.    The advisory guideline range is 188 to 235 months imprisonment.

s/James F.  McClure, Jr.
James F. McClure, Jr.
United States District Judge